**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABRAHAM LIBMAN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>HERCULES, INC.,<br><br>　　　　　　　　　　Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Abraham Libman ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant Hercules, Inc. ("Hercules" or "Defendant").

## NATURE OF THE ACTION

1. Defendant provides reloadable cash cards ("Laundry Cards") designed for use in laundry machines that are also provided by and serviced by Defendant.

2. This case seeks redress for Defendant's practice of misrepresenting the value of these Laundry Cards.

3. These Laundry Cards can be refilled either at Hercules Laundry Card Stations or online at Hercules's website found at https://hercnet.com/refills.

4. Though Defendant represents that a user should "Treat [the Laundry Card] as cash," each of Defendant's Laundry Cards is only useable with a small number of Defendant's laundry machines limited to a single residential building.

5. Defendant only allows users to fill their laundry card with the amounts of $10, $25, $50, and $75. These options can be seen here:



6.  Defendant charges various fees for different size washer and dryers. Fee amounts vary, but include $2.20, $2.60, $2.75, and $3.75.

7.  The implication of the possible prepayment amounts in conjunction with the price of laundry means that it is essentially guaranteed that the balance of a laundry card will never reach zero.

8.  Hercules represents that they will refund the balance of the card at the user's request.

9.  However, this refund policy is a sham. Hercules requires a $5 "processing and handling [sic] fee" to receive this purported refund.[1] Thus, once the consumer has a balance on her Laundry Card below that of the washer or dryer fee amount, Defendant requires the consumer to pay Defendant more than the value of the balance in order to receive their refund.

---

[1] https://hercnet.com/customer-service/ (last accessed 1/25/2021)

10. The possible refill amounts are not random. They are calculated to always produce a remainder which Defendant then keeps.

11. These remaining balances are thus unavailable to Laundry Card users and function as a hidden fee that is not disclosed to users.

12. This refund policy, in conjunction with Defendant's policy of only allowing a Laundry Card to function with a small number of machines, results in New Yorkers often being left with countless Hercules Laundry Cards with balances of a few dollars each that are impossible to use.

13. Defendant did not disclose these practices to Plaintiff and the putative class.

14. Defendant advertises itself as the "largest family-operated laundry room outsource provider in the nation," and promotes its "commitment to superior customer service."[2]

15. However, despite these assertions, social media is replete with complaints about the same practices that appear on this complaint. For example, on Yelp.com, "Brandy C." stated:

> This company is the definition of bad customer service. You won't be able to get your money back … for [the] amount left in your card [when moving out]…. [the company] refused to refund us and told us there's $5 process fee if we want our money back. I can't imagine how much free money they have received from apartment residents.[3]

16. Another reviewer, "Melissa M." stated:

> There is a $10 card loading minimum (which is ridiculous - I don't want to be told how much of MY money I need to give them) and when I called to ask if I could load less, the customer service was terrible. The customer service rep was rude and had canned, non-helpful responses. She kept repeating the same phrase, and when I asked for a manager, she said there were none on duty.[4]

---

[2] https://www.hgar.com/office/hercules-corp (last accessed 1/25/2021)

[3] https://www.yelp.com/biz/hercules-corp-hicksville (last accessed 1/25/2021)

[4] *Id.* (last accessed 1/25/2021)

17. These small balances add up. Defendant has distributed tens of millions of these cards to Laundry Card users throughout the United States. Thus, Defendant has acquired at least tens of millions of dollars in revenue to which it is not entitled.

18. Plaintiff is a Laundry Card User who asserts claims on behalf of himself and similarly situated Laundry Card User for violations of the consumer protection laws of New York and unjust enrichment.

## PARTIES

19. Plaintiff Abraham Libman is a citizen of New York who resides in New York City, New York. Plaintiff Libman has at least two Laundry Cards that were provided by Defendant. One is useable at his current apartment building and another one that he still possesses from a previous address where he lived until the beginning of January 2021. The older Laundry Card includes a $1.75 balance that Plaintiff is unable to access due to Defendant's $5 "processing and handeling [sic] fee."

20. Defendant Hercules Corp. is a New York corporation with its principal place of business at 550 West John Street Hicksville, New York, 11801. Defendant distributes Laundry Cards throughout the United States.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant maintains their principal place of business in this district and a substantial portion of the events that gave rise to this cause of action occurred here.

23. This court has personal jurisdiction over Defendant because Defendant maintains their principal place of business in this district.

## CLASS REPRESENTATION ALLEGATIONS

24. Mr. Libman seeks to represent a class defined as all persons in the United States who possess Laundry Cards that are maintained by Defendant (the "Class").

25. Mr. Libman also seeks to represent a subclass defined as all Class members who reside in New York who possess Laundry Cards that are maintained by Defendant (the "New York Subclass").

26. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

27. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's Laundry Card refund policy is false and misleading.

28. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional

materials and representations, possess Laundry Cards, and suffered a loss as a result of Defendant's possible prepayment amount and refund policies.

29. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

30. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

31. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

33. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations in the marketing of Defendant's Laundry Card.

34. The foregoing deceptive acts and practices were directed at consumers.

35. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the policy of structuring the possible prepayment amount and refund policies in a way as to maximize the balance of the Laundry Cards and increase Defendant's revenue.

36. Plaintiff and members of the New York Subclass were injured as a result because (a) spent money to fill up their Laundry Card, and (b) were charged a hidden fee in the form of a balance that was economically impractical to access.

37. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Unjust Enrichment

38. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

39. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

40. Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant in the form of adding prepayments to their Laundry Cards.

41. Defendant has knowledge of such benefits.

42. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' Laundry Card balance remainders.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant did not disclose that their prepayment and refund policies were structured in way that maximized the balance remainders and then made these balances economically unfeasible to access by requiring a $5 "processing and handling" fee.

43. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## RELIEF DEMANDED

44. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

   a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

   b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

   c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

   d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

   e. For prejudgment interest on all amounts awarded;

   f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: January 29, 2021                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
       Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorney for Plaintiff*